IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ANTONIO DETRAY BATTLE, #250833,   )
                                                                  )
                                                                  )
                      Plaintiff,                          )
                                                                  )
            v.                                                )      CASE NO. 2:17-CV-228-RAH-JTA
                                                                  )                  (WO)
                                                                  )
MR. MAYS, *et al.,*                                   )
                                                                  )
                      Defendants.                      )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION[1]

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed on

April 17, 2017, by Antonio Battle, an indigent state inmate, challenging actions which

occurred on January 14, 2017 at Draper Correctional Facility.  (Doc. 1 at p. 2).  Pursuant

to an order from this court (Doc. 7), he filed an amendment to his complaint. (Doc. 10).

Specifically, Battle alleges that the defendants acted with deliberate indifference when

they failed to protect him from an attack by another inmate on January 14, 2017 and

when they failed to provide him constitutionally adequate medical care.   (Doc. 10 at p.

3).  Further, he claims that the defendants failed to investigate the assault.  (Doc. 10 at p.

4). The named medical defendant is Candice Taylor, LPN, and the named correctional

defendants are Correctional Officers Brenda King, Tracey Smith and Warden Edward

---

[1]All documents and attendant page numbers cited herein are those assigned by the Clerk of this court in
the docketing process.

Ellington.  (Doc. 10 at p. 2).  Battle does not specify whether he sues the defendants in their individual or official capacities; nor does he specify whether he seeks monetary damages or injunctive relief in this cause of action.   (Doc. 10 at p. 4; Doc. 10-1).

The medical defendant filed a special report (Doc. 16, Ex. 1), which included relevant evidentiary materials in support of the report, specifically affidavits, prison documents and medical records, addressing the claims presented by Battle. At the direction of the court, the medical defendant also filed an additional affidavit.  (Doc. 19, Ex. 1).  The correctional defendants also filed a special report (Doc. 37, Exs. 1-5), which included specifically affidavits and prison documents addressing the claims presented by Battle.  In these documents, the defendants deny they acted with deliberate indifference to Battle's safety or medical needs.

After reviewing the special reports and exhibits, the court issued an order on January 11, 2018, requiring Battle to file a response to the defendants' special reports, supported by affidavits or statements made under penalty of perjury and other evidentiary materials.  These orders specifically cautioned that "**unless within ten (10) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule

2

on the motion for summary judgment in accordance with the law." (Doc. 39 at 3-4). Battle filed a response to this order.  (Doc. 40).

Pursuant to the directives of the order entered on January 11, 2018, the court now treats the defendants' special reports (Docs. 16, 37) and supplements thereto as motions for summary judgment and concludes that summary judgment is due to be granted in favor of the defendants.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed. R. Civ. P. 56(a), ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[2] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits],

---

[2]Although Rule 56 underwent stylistic changes in 2010, the revision of "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word — genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  Fed. R. Civ. P. 56, Adv. Comm. Notes, "Subdivision (c)" (2010 Amendments).  "'[S]hall' is also restored to express the direction to grant summary judgment."  *Id.*  Despite these changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

which it believes demonstrate the absence of a genuine [now dispute] of material fact."
*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Williamson Oil Company, Inc. v. Phillip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003) (holding that moving party bears the initial burden of establishing there is no genuine dispute as to any material fact); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (same). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by demonstrating that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–24. The moving party discharges his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011).

When the defendants meet their evidentiary burden, as they have in this case, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the

4

movant is entitled to it."). Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact. *Jeffery*, 64 F.3d at 593–94 (internal quotation marks omitted). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Education for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007). In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).

To proceed beyond the summary judgment stage, an inmate-plaintiff may not rest upon his pleadings but must produce "sufficient [favorable] evidence" which would be admissible at trial supporting each essential element of his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence [on which the nonmoving party

relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249–50. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1576–77 (11th Cir. 1990) (internal citation omitted). Conclusory allegations based on a plaintiff's subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (holding that grant of summary judgment is appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case

6

the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (holding that summary judgment is appropriate where no genuine dispute of material fact exists).   At the summary judgment stage, this court must "consider all evidence in the record . . . [including] pleadings, depositions, interrogatories, affidavits, etc. — and can only grant summary judgment if everything in the record demonstrates that no genuine [dispute] of material fact exists."   *Strickland v. Norfolk Southern Railway Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

For summary judgment purposes, only disputes involving material facts are relevant.   *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).   What is material is determined by the substantive law applicable to the case.   *Anderson*, 477 U.S. at 248.   "Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."   *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004).   "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."   *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).   "[T]here must exist a conflict in substantial evidence to pose a jury question."   *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing *Anderson*, *supra*).

7

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323–24.  A court may grant summary judgment where the pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact.  *Id*.  To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.  *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine

dispute of material fact.  *Beard*, 548 U.S. at 525, 126 S. Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, Battle's pro se status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record.  After such review, the court finds that Battle has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants.

## III.  FACTS

In his complaint, the plaintiff alleges that Defendant Correctional Officer Deteri Mayes failed to protect him from an attack by another inmate.  Specifically, he claims that on January 14, 2017, inmate Anthony Means was "hallucating [sic] on drugs" and he "hadn't said anything no words at all to the inmate" when Means stabbed the plaintiff. (Doc. 10-1 at pp. 6-7).   Further, he alleges that at the time of the attack, "[t]he officer, Mr. Mayes, was less than 5 feet away from, watch, failed to intervene.  He fail [sic] to do his job.  He did not respond in the right amount of time on his part."  (Doc. 10 at p. 3). He further stated that "[a]nother officer Kelly had to come from another cell, spray the guy who was stapping [sic] me."  (Doc. 10-1 at p. 2).  He also claims that Defendants Captain King, Captain Smith and Warden Ellington failed to investigate the attack and "didn't bring no action forward to the person who stap [sic] me, no dispinary [sic], no nothing."  (Doc. 10-1 at p.2).  The incident report for the assault states as follows:

On January 14, 2017, at approximately 7:30 p.m., Officer Deteri Mayes, A-Dorm Rover, observed inmate Anthony Means, B/239529, in possession of a weapon, fighting inmate Antonio Battle B/250833, in the downstairs television area. Officer Mayes immediately radioed for assistance and issued several verbal commands to inmates Means to drop the weapon and for the inmates to stop fighting. Inmates Means and Battle failed to comply with the directives given. Officer Mayes deployed his chemical agent, yelled "Gas" and administered a short burst of his Sabre Red into the facial area of inmate Means. Inmate Means dropped the weapon to the floor and fled the scene. Officer Mayes retrieved the weapon from the floor and secured the weapon inside his front right pants pocket and went in pursuit of inmate Means. Sergeants Justin McDonald and Jackie Pettway along with Officers Ronald Lewis, Joshua Smith, and Deointequan Murry arrived on the scene for assistance. Officer J. Smith secured handcuffs on inmate Battle and escorted him to the Shift Commander Office. Officer Mayes observed inmate Means near the bathroom area and instructed inmate Means several times to turn around to be handcuffed to the rear. Inmate Means failed to comply with the directives given. Officer Mayes grasped inmate Means by the left arm from the rear and executed a two on one take down technique from the standing position placing inmate Means to the floor. Officer Mayes then secured inmate Means in hand cuffs to the rear. Sergeant Jackie Pettway arrived on the scene and assisted inmate Means to his feet. Sgt. Pettway escorted inmate Means to the Restrictive Housing Unit for decontamination. Inmate Means was given access to water, soap and circulating air. Sergeant McDonald questioned inmates Means and Battle separately. During questioning, inmate Means stated, "We were joking in the shower. I told him I was high on cookie dough and to leave me alone. He got the best of me and I snapped." Sergeant McDonald questioned inmate Battle. During questioning, inmate Battle stated, "We were laughing and joking in the shower. I got out and the next thing I know I got stabbed." Sergeant McDonald took photographs of inmates Means and Battle. At approximately 7:40 p.m., Officer Joshua Cruikshank escorted inmate Battle to the Staton Healthcare unit where he received a medical assessment (see attached Medical Report). At approximately 7:43 p.m. Nurse Janice Reeves contacted Sergeant McDonald and advised that per orders of Doctor Anita Wilson inmate Battle would need to be transport [sic] by ADOC to Jackson Hospital. At approximately 7:50 a.m., Sgt. McDonald apprised Warden III Edward Ellington, Correctional Captain Brenda King, Agent Leroy Dale, I&I of the incident. At approximately 8:00 p.m., Officers Jonathan Bonifay and Anthony Murphy retrieved inmate Battle's dummy file and the proper security equipment for the transport, Officers Bonifay and Murphy departed Draper in Van 440 en-route to Staton Health Care Unit. At approximately, 8:20 p.m., Officers Murphy and Bonifay departed Staton with inmate Battle en-route to Jackson Hospital. At approximately 8:30 p.m., Officer Cruikshank escorted inmate Means to the Staton Health Care Unit where he received a medical assessment (see attached Medical Report). Sergeant McDonald

verbally reprimanded inmate Means on his negative behavior and informed him that disciplinary action would be initiated against him for assault with a weapon on another inmate.  Inmate Means was reassigned to the Restrictive Housing Unit.  At approximately 8:55 p.m., Sergeant McDonald secured the weapon into an evidence bag and secured the weapon into the evidence box located in the Front Cubicle.  At approximately 11:30 p.m., Officers Bonifay and Murphy returned to Staton Health Care Unit with inmate Battle.  At approximately 11:47 p.m., inmate Battle was released by Staton's medical staff.  Officer Bonifay escorted inmate Battle to Draper where he was released to his assigned dormitory without disciplinary action due to inmate Battle acting in self-defense.

(Doc. 37-1 at pp. 9-10).

## IV.  SOVEREIGN IMMUNITY

To the extent Battle requests monetary damages from the defendants in their official capacities, they are entitled to sovereign immunity.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied.  Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted).  Thus, a state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

11

> Neither waiver nor abrogation applies here. The Alabama Constitution
> states that "the State of Alabama shall never be made a defendant in any
> court of law or equity." Ala. Const. Art. I, § 14.  The Supreme Court has
> recognized that this prohibits Alabama from waiving its immunity from
> suit.

*Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh,* 438 U.S. 781, 782 (1978)

(consent is prohibited by the Alabama Constitution). "Alabama has not waived its

Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it."  *Holmes v.*

*Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala*., 916

F.2d 1521, 1525 (11th Cir. 1990)).  In light of the foregoing, the defendants are entitled

to sovereign immunity under the Eleventh Amendment for claims seeking monetary

damages from them in their official capacities. *Selensky*, 619 F. App'x at 849; *Harbert*

*Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials

sued in their official capacities are protected under the Eleventh Amendment from suit

for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir.

1995) (holding that damages are unavailable from state official sued in his official

capacity).  Thus, the Court will now address the plaintiff's claims brought against

defendants in their individual capacities.

## V. DISCUSSION

### A.  Deliberate Indifference

**1.  <u>Standard of Review.</u>**  "A prison official's duty under the Eighth Amendment

is to ensure reasonable safety, a standard that incorporates due regard for prison officials'

unenviable task of keeping dangerous men in safe custody under humane conditions."
*Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994) (internal quotation marks and citations omitted).  Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's health and safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards the risk by failing to take reasonable measures to abate it.  *Id*. at 828.  A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk."  *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).  "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety."  *Farmer*, 511 U.S. at 834.  "Within [a prison's] volatile community, prison administrators are to take all necessary steps to ensure the safety of . . . the prison staffs and administrative personnel. . . .  They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates themselves."  *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984) (internal quotation marks omitted).  The Eleventh Circuit has, however, consistently stressed that a "prison custodian is not the guarantor of a prisoner's safety."  *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990); *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313 (11th Cir. 2005) (same).  "Only [a] prison official's deliberate indifference to a known, substantial risk of serious

13

harm to an inmate violates the Eighth Amendment." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (internal quotation marks and citation omitted). "[D]eliberate indifference describes a state of mind more blameworthy than negligence" and, therefore, ordinary lack of due care for a prisoner's health or safety will not support an Eighth Amendment claim. *Farmer*, 511 U.S. at 837. "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation [under the Eighth Amendment], there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982).

To prevail on a claim concerning an alleged denial of medical treatment, an inmate must—at a minimum—show that the defendant acted with deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989). Correctional personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (holding, as directed by *Estelle*, that a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment"). In determining whether a delay in medical treatment constituted deliberate indifference, the

court considers the seriousness of the medical need, whether the delay worsened the medical condition, and the reason for the delay. *See Goebert v. Lee County, Fla*., 510 F.3d 1312, 1327 (11th Cir. 2007); *Farrow v. West*, 320 F.3d 1235, 1247 (11th Cir. 2003). Additionally, when an inmate complains that a delay in medical treatment rises to the level of a constitutional violation, he "must place verifying medical evidence in the record" which establishes the detrimental effect caused by the delay to succeed on his claim. *Surber v. Dixie County Jail*, 206 F. App'x 931, 933 (11th Cir. 2006) (internal citation omitted).

The law is well settled that establishment of both objective and subjective elements are necessary to demonstrate an Eighth Amendment violation. *Caldwell*, 748 F.3d at 1099. With respect to the requisite objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh v. Butler County, Ala*., 268 F.3d 1014, 1028-29 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual conditions; it outlaws cruel and unusual punishments. . . . [A]n official's failure to alleviate a significant risk that he

should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-38 (internal quotation marks omitted); *Campbell v. Sikes,* 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . .  It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a 'sufficiently culpable state of mind.'" *Farmer*, 511 U.S. at 834-38, 114 S. Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S. Ct. 2321, 2324-25, 115 L. Ed. 2d 271 (1991). . . .  Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists – and the prison official must also "draw that inference."  *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . .  Each individual Defendant must be judged separately and on the basis of what that person [knew at the time of the incident]."  *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).  Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a

mere possibility before a [state official's] failure to act can constitute deliberate indifference."  *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal quotation marks and citations omitted).  Thus, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983."  *Id*.  Even where a prison official perceives a serious risk of harm to an inmate, the official "may still prevail if he responded reasonably to the risk, even if the harm ultimately was not averted." *Comstock v. McCrary*, 273 F.3d 693, 706 (6th Cir. 2001) (internal quotation marks and citation omitted).   In sum, prison officials cannot be held liable under the Eighth Amendment unless there is an objectively substantial risk of harm to an inmate, the defendants have knowledge of this substantial risk of harm and with this knowledge consciously disregard the risk.  *Farmer*, 511 U.S. at 837.

   **2.  <u>Failure to Protect</u>.**  To survive the properly supported motions for summary judgment filed by the defendants, Battle must first demonstrate an objectively substantial risk of serious harm existed to him from inmate Anthony Means and "that the defendants disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014) (citing *Caldwell*, 748 F.3d at 1100).  If he establishes these objective elements, Battle must then satisfy the subjective component.  This requires Battle to show "that [each] defendant subjectively knew that [he] faced a substantial risk of serious harm.  The defendant must both be

aware of facts from which the inference could be drawn that a substantial risk of serious

harm exists, and [they] must also draw the inference." *Id.* (internal citation omitted).

> To survive a motion for summary judgment, a plaintiff must submit
> evidence that the defendant-official had subjective knowledge of the risk of
> serious harm. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).
> In determining subjective knowledge, a court is to inquire whether the
> defendant-official was aware of a "particular threat or fear *felt by [the]
> [p]laintiff*." *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir.2003)
> (emphasis added).   Moreover, the defendant-official "must be aware of
> specific facts from which an inference could be drawn that a substantial risk
> of serious harm exists — and the prison official must also draw that
> inference." *Id.* at 1349 (quotations omitted).

*Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005) (emphasis in original).

Based upon the court's careful review of all the evidence, the court concludes that

the plaintiff fails to even allege, much less offer any proof, that the defendants were

aware he was at risk for assault on January 14, 2017 by Anthony Means.  Accordingly,

the Court concludes that summary judgment is due to be granted in favor of the

defendants on the claim alleging they acted with deliberate indifference to Battle's safety.

### 3. **Deficient Medical Treatment**.

Battle alleges the defendants acted with deliberate indifference to his medical

needs by allowing him to "almost bleed [sic] to death.  I sat in the health care for 30

minutes before being treated supposedly, then I had to listen to a huge argument on who

was going to take me to the hospital."  (Doc 10-1 at p. 3).  He also alleges that since the

incident he has "been in extreme paine [sic]. I can't even sleep at night."  (Doc. 10 at p.

3).  He further alleges that "[t]he healthcare as a whole refuse [sic] to follow up, check

18

my stab wounds." (Doc. 10-1 at p. 2). However, he names only Nurse Candice Taylor as a medical defendant. (Doc. 10 at p. 2; Doc. 10-1 at p. 2). Finally, in his response to the medical defendant's special report, the plaintiff states that his rash, sinus problems and back pain "have nothing to do with this lawsuit." (Doc. 26 at p. 1).

In her affidavit, Nurse Taylor states as follows:

My name is Candice Taylor, LPN. I am over the age of nineteen (19) years, and I have personal knowledge as to all facts and matters set forth herein. I am a Licensed Practical Nurse (LPN) licensed to practice nursing in the state of Alabama. I currently practice as an LPN at the Staton Correctional Facility located in Elmore County, Alabama.

I am employed by Corizon, LLC. Corizon holds the contract with the Alabama Department of Corrections (ADOC) to provide health care related services to state inmates incarcerated within Alabama state correctional facilities.

I am personally familiar with inmate Antonio Battle (AIS # 250 833). Mr. Battle is a state inmate incarcerated at the Staton Correctional Facility.

I am in receipt of and I have reviewed the medical complaint filed by Mr. Battle. I am aware that Mr. Battle alleges that he did not receive adequate medical attention subsequent to being involved in an altercation with another inmate on January 14, 2017.

I have attached relevant portions of Mr. Battle's medical chart to my affidavit.

Mr. Battle was seen in the health care unit on January 14, 2017 subsequent to an altercation with another inmate. A body chart documentation form was completed by a nurse other than myself at the health care unit. The nurse noted "2 stab wounds to r upper back area, 1 upper arm area, 1 stab wound to anterior 1 shoulder area, 33 stab wounds to one upper arm area."

The same nurse, and not me, completed a nursing encounter tool on January 14, 2017. All of Mr. Battle's vital signs appeared to be relatively normal.

The medical provider was contacted at 8:00 p.m. by the nurse, not me, and Mr. Battle was sent to Jackson Hospital in Montgomery, Alabama due to receiving several stab wounds due to the altercation with the other inmate.

Mr. Battle was seen and evaluated by the physicians at Jackson Hospital and received a tetanus shot due to the stab wounds he had received.

Mr. Battle was also prescribed a Keflex by the medical provider at Jackson Hospital emergency department.

It would appear that Mr. Battle was also prescribed Excedrin and Advil subsequent to the altercation.

19

Mr. Battle was apparently returned to the correctional facility on January 15, 2017. The return from office notes indicate that Mr. Battle received ten staples to his right side, five staples to his left side and was ambulating without assistance.

An x-ray was taken of Mr. Battle's chest on January 16, 2017.  The radiologist read the x-ray as follows:

Chest – one view (AP)
Results:  The heart is normal in size and configuration.  The mediastinum is normal without adenopathy.  The lung fields are clear without mass, infiltrate, congestion or effusion.  Bony structures are unremarkable without acute fracture or destructive lesions.
Conclusion: No acute cardiopulmonary disease seen.

Mr. Battle completed a sick call request on January 24, 2017 complaining of back pain.

Mr. Battle was seen by me on January 26, 2017, complaining of lower back pain that had been ongoing since 2006.  Mr. Smith informed me that he had been jumped by another inmate at the county jail in 2007.  Mr. Battle complained of nothing more than lower back pain when I saw and evaluated him on January 26, 2017.

My notes from January 26, 2017 on a nursing encounter tool state as follows:

Inmate referred to provider for current complaint.  No signs or symptoms of acute distress noted. Breathing with ease. Respirations even and unlabored.  Instructed to follow up at health care unit if present complaints worsen.

Mr. Battle was seen by the medical provider on January 30, 2017 again complaining of back pain.  The medical provider noted that Mr. Battle was provided with Ibuprofen and an x-ray had been taken of his lumbar spine.  The medical notations from January 30, 2017 make no reference to any issues Mr. Battle may have had subsequent to an altercation with the other inmate on January 14, 2017.

An x-ray was taken of Mr. Battle's lumbar spine on January 31, 2017.  The x-ray was read by the radiologist as follows:

Examination:
Lumbar Spine AP and LAT
Results:  There is ariatomic alignment of lumbar vertebrae.  The vertebral bodies have normal shape and ossification pattern.  Posterior elements are intact.  Bony foraminal narrowing and disc space narrowing at L5-S1.  L5 transverse processes are closed again at the sacrum.  No acute vertebral fracture.

20

Conclusion:   Bony foraminal narrowing and disc space narrowing at L5-S1. Correlate with CT for greater detail, as deemed indicated, particularly if there is ongoing concern for acute fracture.

Mr.  Battle filed a medical grievance on March 7, 2017 complaining of the treatment that he received due to his back.

Mr. Battle completed a sick call request on March 7, 2017 and again on March 10, 2017, with regard to his back pain.

The medical records reveal that I again saw and evaluated Mr. Battle on March 11, 2017.  Mr. Battle was again complaining of lower back pain as the result of having an altercation in 2007 at the county jail.

My notes from March 11, 2017 state as follows:

Inmate has a follow up appointment scheduled for March 20, 2017.  No signs or symptoms of acute distress noted.  Breathing with ease.  Respirations even and unlabored. Skin warm and dry to the touch.

Besides the two occasions that I have specifically noted and can be seen in the attached medical records, I have no recollection of providing nursing care to Mr. Battle.

It does not appear, from Mr. Battle's medical chart, that Mr. Battle at any time completed or filed a medical grievance as a result of the nursing care that I provided to Mr. Battle subsequent to the altercation that he had with another inmate on January 14, 2017.

After reviewing the medical records of Mr. Battle and my personal recollection of the nursing care I provided to Mr. Battle, it is my opinion that I at all times provided nursing care within the standard of care of nurses practicing nursing in the state of Alabama.

(Doc. 16-1 at pp. 2-5).

The Court has carefully reviewed all the medical records provided (Doc. 16-1 at

pp. 6-47), including the affidavits of Nurse Taylor (Doc. 16-1 at pp. 2-5) and Nurse

Michelle Sagers-Copeland.[3]   (Doc. 19-1 at pp. 2-7).   These records demonstrate that

---

[3]  The plaintiff does not complain in this action about his access to the grievance process.  However, Nurse Michelle Sagers-Copeland, who serves as Health Services Administrator at the Staton Correctional Facility and is responsible for the grievance procedure and for reviewing and responding to inmate

Nurse Taylor did not personally see or treat the plaintiff for injuries resulting from the 7:30 p.m. January 14, 2017 altercation.  These records further show that the plaintiff was seen by a nurse within twenty minutes of the assault and a body chart was completed noting stab wounds to his arms and upper back.  (Doc. 16-1 at p.7; Doc. 37-1 at p. 14). Within an hour he was transported to Jackson Hospital emergency room where he received a tetanus shot (Doc. 16-1 at p. 13; Doc. 37-1 at p. 9), fifteen staples for his wounds (Doc. 16-1 at p. 23) and was prescribed Keflex and Excedrin and Advil (Doc. 16-1 at pp. 20-22).  Before midnight, the plaintiff returned from Jackson and was released to his assigned dormitory by prison medical staff.  (Doc. 37-1 at p. 10).   Upon his return from Jackson, his chest was x-rayed.  (Doc. 16-1 at p. 24).  He was seen and treated thereafter multiple times at Staton Health Care for complaints of back pain. (Doc. 16-1 at pp. 25-47).

The court concludes that the plaintiff fails to prove that his medical treatment for the stab wounds was delayed or that his condition was made worse by the alleged delay. *Surber,* 206 F. App'x at 933. Furthermore, the court concludes that the record is devoid of evidence—significantly probative or otherwise—showing that the medical defendants acted with deliberate indifference to the plaintiff's medical needs.  For the foregoing

---

grievances, testified in her affidavit concerning the grievance process and its availability to the plaintiff. Also, she stated that the plaintiff did not file any grievances concerning the medical treatment he received from the January 14, 2017 altercation.  (Doc. 19-1 at pp. 4-6).

reasons, summary judgment is due to be granted in favor of defendants on the plaintiff's claim of deliberate indifference due to a delay in medical treatment.

## B.  Failure to Investigate

It is well-settled that § 1983 does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere.  *See Oklahoma City v. Tuttle,* 471 U.S. 808, 816 (1985).   Here, Plaintiff's conclusory allegations that the defendants failed to adequately investigate the assault and bring disciplinary charges against inmate Anthony Means fails to implicate any constitutional right to which he is entitled.   The failure to properly investigate an inmate's complaint does not rise to the level of a separate constitutional violation. Inmates simply do not enjoy a constitutional right to an investigation of any kind by government officials.  *See DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 196 (1989) (The Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual.)   Thus, the court concludes that the conduct about which Plaintiff complains does not rise to the level of a constitutional violation and that summary judgment is due to be granted on Plaintiff's claim for the defendants' failure to investigate.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motions for summary judgment (Docs. 16, 37) be GRANTED.

2. Judgment be GRANTED in favor of the defendants.

3. This case be DISMISSED with prejudice.

4. No costs be taxed.

On or before **July 7, 2020**, the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made. Frivolous, conclusive, or general objections to the Recommendation will not be considered.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 22nd day of June, 2020.


/s/ Jerusha T. Adams
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE